IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RONALD J. LEAR, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action    02-1747 |
| | ) | |
| BOROUGH OF BRENTWOOD, OFFICER | ) | |
| MILTON MULHOLLAND, III, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM ORDER

CONTI, District Judge

On February 23, 2006, this court issued a memorandum opinion that, among other things, granted summary judgment in favor of defendant Officer Milton Mulholland ("Mulholland" or "defendant") with respect to the claim of Ronald J. Lear's ("Lear" or "plaintiff") against defendant arising from his involuntary commitment under the Pennsylvania Mental Health Procedures Act ("MHPA"), 50 PA. STAT. ANN. § 7101 et. seq. (West 2001). Plaintiff filed a motion requesting, among other things, that the court reconsider its decision with respect to that finding. The court had granted summary judgment on that claim by reason of its finding that defendant was entitled to qualified immunity.

On March 3, 2006, the court held a status conference and heard argument on plaintiff's motion for reconsideration. The court granted the motion with respect to the narrow issue whether defendant was entitled to qualified immunity with regard to plaintiff's claim arising from his involuntary commitment under the MHPA. The court permitted defendant to file a

renewed motion for summary judgment raising that issue.  On March 16, 2006, defendant filed a renewed motion for summary judgment asserting that he is entitled to qualified immunity with respect to plaintiff's claim under the MHPA and alternatively that he is entitled to immunity under the provisions of the MHPA.

In this memorandum order, the court considers the renewed motion for summary judgment filed by defendant.  (Doc. No. 61).   After considering the joint statement of material facts, the motion and the submissions of the parties, the court will deny defendant's motion.

### *Factual Background*

On July 21, 2002, law enforcement was summoned to East Garden Street, Brentwood, Pennsylvania.  Joint Concise Statement of Material Facts ("J.S.") ¶ 1.  Law enforcement responded to the emergency telephone call of Laura Schmidt ("Laura Schmidt").  J.S. ¶ 2.  She stated:

> This is Laura Schmidt at 421 East Garden.  My neighbor is
> carrying on and he is out on the front street with a gun.  I don't
> know what kind it is, but it's a gun.

Id.  Laura Schmidt identified her neighbor, Lear, as carrying "a big handgun."  Id. ¶ 3.  Police dispatch reported to defendant that "there was a man out of the front street with a gun, a handgun in his hand" and that the person carrying the handgun is someone "who lives right next door to this address – he lives at 423."  Id. ¶ 4.  Defendant arrived at the location within a minute of receiving the dispatch.  Id. ¶ 5.  Upon arrival, defendant exited his patrol vehicle and scanned the scene on foot.  Id. ¶ 6.

The parties dispute whether defendant first spoke to Laura Schmidt or approached plaintiff's house.  Id. ¶ 6.

2

Mulholland testified that Laura Schmidt was "quite upset and emotional" at witnessing plaintiff screaming while carrying a handgun.  Id. ¶ 7.  Mulholland also testified that another neighbor, Betty Couch ("Couch") informed him that she "did indeed see [plaintiff] out in front" with a handgun.  Id.  While Mulholland testified to those facts, plaintiff referenced the deposition testimony of Laura. Schmidt and Couch to dispute those facts.  Id. ¶¶ 6-7.  Specifically, plaintiff quoted the testimony of Laura Schmidt that she did not speak with defendant until after Lear's arrest and Couch's testimony, among other things, that the gun in Lear's possession looked like a toy gun and that she did not hear Lear screaming at the Schmidts.

The parties also dispute what occurred after plaintiff exited his home.  Id. ¶ 8.  Defendant claims that plaintiff was returned to his home in the company of officers and plaintiff, in conversing with defendant, told him that he took his pellet gun outside to scare his neighbors.  Id. ¶ 8.  Plaintiff disputes those facts and denies making the statement that he took his gun outside to scare his neighbors.  Id.

The parties further dispute the facts of the conversation between plaintiff and defendant. Id. ¶ 9.  Mulholland testified that plaintiff told him that his neighbors, the Schmidts, had damaged his driveway.  Id.  Mulholland testified that he observed plaintiff, agitated and upset, rocking back and forth, and stating, "I'm going to fix my neighbors."  Id.  Mulholland testified that plaintiff was still visibly upset, that he was rocking, and moving his feet.  Id. ¶ 10.  Finally, Mulholland testified that plaintiff's manner went from calm to "visibly distraught" in a matter of two minutes.  Id.  Plaintiff denies those facts relating to defendant's discussion with plaintiff.  Id. ¶¶ 9-10.  Specifically, plaintiff testified in his deposition that he was quiet and did not say he was

"going to fix my neighbors." Id. at ¶ 9. Carole Lear, plaintiff's wife, also testified that Lear was quiet. Id. at ¶ 10.

Mulholland further testified that, upon speaking with plaintiff, he reviewed plaintiff's driveway for signs of damage. Id. ¶ 11. He testified that he found no damage of any kind. Id. Plaintiff disputes the fact that there was no damage to the driveway. Id. Plaintiff refers to the deposition testimony of Couch that there was a substance on Lear's driveway and Carole Lear's testimony to the same effect. Id.

The parties also dispute what occurred when Mulholland returned to plaintiff's residence. Mulholland testified that he returned to plaintiff's residence and learned that a pellet gun had been retrieved. Id. ¶ 12. Plaintiff disputes this fact and refers to his deposition testimony that plaintiff told defendant he had been carrying a pellet gun when he first returned to his house. Id. Mulholland also testified that plaintiff told him that he could not "take this anymore" in reference to an ongoing dispute with his neighbors. Id. ¶ 13. Plaintiff also disputes this fact and denies ever making such a statement to defendant. Id.

The parties also dispute the facts relating to their conversation about criminal prosecution for plaintiff's conduct. Mulholland testified that he informed plaintiff of the possibility of prosecution for his conduct and that plaintiff's wife, Carole Lear, became upset and the discussion shifted to seeking medical assistance for plaintiff. Id. ¶ 14. Plaintiff denies these factual averments and refers to his deposition testimony and the deposition testimony of Carole Lear in which they describe defendant as telling plaintiff he was going to be arrested or taken to the hospital. Id. Mulholland also testified that Carole Lear informed him that plaintiff was under a physician's care for mental health difficulties and requested Mulholland contact plaintiff's

4

physician.  Id. ¶ 15.  Plaintiff disputes these facts and refers to the deposition testimony of Carole

Lear that she did not inform defendant of plaintiff's medical status.  Id.

       Mulholland contacted plaintiff's physician and informed him of plaintiff's involuntary

commitment.  Id. ¶ 16.  The parties dispute whether Mulholland and the physician discussed

where plaintiff would be committed.  Id.  It is undisputed that plaintiff was transported to

Jefferson Memorial Hospital by ambulance and involuntarily committed for the purposes of

mental health evaluation and treatment.  Id. ¶ 17.

### *Standard of Review*

       Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if,

drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law."  FED.R.CIV.P. 56(c).  A motion for summary judgment will not be defeated by the

mere existence of some disputed facts, but will be defeated when there is a genuine issue of

material fact.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  In determining

whether the dispute is genuine, the court's function is not to weigh the evidence or to determine

the truth of the matter, but only to determine whether the evidence of record is such that a

reasonable jury could return a verdict for the nonmoving party.  Id. at 249.  The court may

consider any material or evidence that would be admissible or usable at trial in deciding the

merits of a motion for summary judgment.  Horta v. Sullivan, 4 F.3d 2, 8 (1st Cir. 1993) (citing

WRIGHT AND MILLER, FEDERAL PRACTICE § 2721); Pollack v. City of Newark, 147 F.Supp. 35,

39 (D.N.J. 1956), aff'd, 248 F.2d 543 (3d Cir. 1957), cert.denied, 355 U.S. 964 (1958) ("in

considering a motion for summary judgment, the court is entitled to consider exhibits and other

papers that have been identified by affidavit or *otherwise made admissible in evidence*")

(emphasis added).

### *Analysis*

## I.      Qualified Immunity–The Legal Framework

Defendant asserts that he is entitled to summary judgment in his favor on plaintiff's claim

for involuntary commitment asserted against him on the ground of qualified immunity.  The

Supreme Court recognized that suits against state officials are another way of suing a state.

Hafer v. Melo, 502 U.S. 21, 25 (1991).   When sued in their personal capacities, state officers or

officials, however, come to court as individuals.  Id. at 27.  A state official, when sued as an

individual, fits within the statutory term "person" under 42 U.S.C. § 1983.  Id.

The privilege of qualified immunity recognizes the balance between the need for a forum

to vindicate the abuse of federal rights and the "substantial societal costs" entailed in opening

government officials to suit for the discretionary exercise of their public duties.  Harlow v.

Fitzgerald, 457 U.S. 800, 814 (1982).  The United States Supreme Court resolved these

competing concerns "by generally providing government officials performing discretionary

functions with a qualified immunity, shielding them from civil damages liability as long as their

actions could reasonably have been thought consistent with the rights they are alleged to have

violated."  Anderson v. Creighton, 483 U.S. 632, 638 (1987); Acierno v. Cloutier, 40 F.3d 597,

615 (3d Cir. 1994), ("that there is a compelling need for such protective doctrine because of the

severe chilling effect numerous suits for damages would have on prospective officials").

An objective inquiry is required into the reasonableness of the actions of government

officials that permits government officials to anticipate when their conduct may give rise to

6

liability for damages.  Anderson, 483 U.S. at 645-66.  The privilege affords "protection to all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  "Thus, law enforcement officials who 'reasonably but mistakenly' conclude that their conduct comports with the requirements of the Fourth Amendment are entitled to immunity."  Sharrar v. Felsing, 128 F.3d 810, 826 (3d Cir. 1997)(quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)).  When it attaches, the privilege of qualified immunity "is an *immunity from suit* rather than a mere defense to liability" which is lost if defendants are permitted to go to trial.  Saucier v. Katz, 533 U.S. 194, 200-01 (2001).  Once qualified immunity is asserted by a defendant, the plaintiff has the burden of demonstrating the privilege should not attach. McLaughlin v. Watson, 271 F.3d 566, 570 (3d Cir. 2001).

An analytical framework was developed to test whether a defendant is entitled to qualified immunity.  Under this framework, the inquiry into the claim of qualified immunity is distinct from the inquiry into the merits of the claim.  Saucier, 533 U.S. at 197.  First, the court must determine whether the facts, taken in a light most favorable to the plaintiff's allegations, show that defendant's conduct violated a federal right or constituted a constitutional violation. Id. at 201.  In determining this first step, the court should "set forth principles which will become the basis for a holding that a right is clearly established."  Id.

If a federal right would be violated based upon a plaintiff's allegations, the court must move to the next step: whether the federal right alleged to be violated was clearly established to a degree of particularity within the specific context of the case at issue.  Id.  A broad and generalized declaration that a clearly established federal right was violated is insufficient. Anderson, 483 U.S. at 640.  For example, in Anderson, the Supreme Court determined that for purposes of applying the qualified immunity privilege, the simple assertion that the Fourth

Amendment prohibits warrantless searches without probable cause and exigent circumstances was not enough to demonstrate that the defendants' conduct violated a "clearly established" right under the particular facts of that case. Id. at 640-41. Instead, the Court stated that, in order for a right to be "clearly established," "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id.

If a rule requiring particularity was not in place, "[p]laintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights." Id. at 639. The net effect would be to transform "a guarantee of immunity into a rule of pleading." Id. Thus, for the second prong of the framework, a right is "clearly established" where "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202. If the court determines that a review of the particular context demonstrates that the rights alleged to have been violated have been "clearly established," the court reaches the third and final step in the analytic framework: "whether a reasonable government official should have known that the alleged action violated the plaintiffs' rights." Doe v. County of Centre, Pa., 242 F.3d 437, 454 (3d Cir. 2001).

The Supreme Court of the United States instructs that determining whether a right was "clearly established depends, in large degree, on the degree of particularity within the specific context of the case at issue." Saucier, 533 U.S. at 197. Other courts have noted that a public official is considered to have constructive knowledge of established law. Cannon v. City & County of Denver, 998 F.2d 867, 874 n.6 (10th Cir. 1993). In addition, the Supreme Court has instructed lower courts to apply all precedents within their knowledge in deciding the issue of qualified immunity. Elder v. Holloway, 510 U.S. 510 (1994).

8

Plaintiff claims that Mulholland is not entitled to qualified immunity and that Mulholland violated plaintiff's constitutional rights because plaintiff's Fourth Amendment[1] rights were violated when he was involuntarily committed.

## II.      Statutory immunity under the MHPA

Section 7114(a) of the MHPA provides:

### § 7114. Immunity from civil and criminal liability.

(a) In the absence of willful misconduct or gross negligence, a county administrator, a director of a facility, a physician, a peace officer or any other authorized person who participates in a decision that a person be examined or treated under this act, or that a person be discharged, or placed under partial hospitalization, outpatient care or leave of absence, or that the restraint upon such person be otherwise reduced, or a county administrator or other authorized person who denies an application for voluntary treatment or for involuntary emergency examination and treatment, shall not be civilly or criminally liable for such decision or for any of its consequences.

50 PA. STAT. ANN. § 7114(emphasis added).

The United States Court of Appeal for the Third Circuit has addressed the standards for both gross negligence and willful misconduct in the context of section 7114(a) of the MHPA.  In Doby v. DeCrescenzo, 171 F.3d 858 (3d Cir. 1989), the court or appeals noted that "Pennsylvania law defines gross negligence in the context of the MHPA as 'facts indicating more egregiously deviant conduct than ordinary carelessness, inadvertence, laxity or indifference. . . .'" Id. at 875 (quoting Albright v. Abington Memorial Hosp., 696 A.2d 1159, 1164 (Pa. 1997)).  The court of appeals further reasoned that willful misconduct "exists when 'the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent,

---

[1]The Fourth Amendment is applicable to state action via the Due Process Clause of the Fourteenth Amendment.  Mapp v. Ohio, 367 U.S. 643, 646-53 (1961).

there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong.'" Id. (quoting Krivijanski v. Union R. Co., 515 A.2d 933, 937 )(Pa. Super. Ct. 1986)). Defendant claims that his conduct does not rise to the level of willful misconduct or gross negligence and thus he claims he is entitled to immunity under section 7114(a) of the MHPA.

## II.   Genuine issues of material fact preclude summary judgment

The Fourth Amendment applies to civil as well as criminal proceedings.  O'Connor v. Ortega, 480 U.S. 709, 714-15 (1987); Doby v. DeCrescenzo, 171 F.3d 858, 871 (3d Cir. 1999). In proceedings such as those contemplated under the MHPA, the court's fundamental inquiry is to determine what is reasonable under the circumstances.  Cady v. Dombrowski, 413 U.S. 433, 439-40 (1973).  The United States Court of Appeals for the Third Circuit held in Doby that the MHPA qualifies under the "special needs" exception to the warrant requirement of the Fourth Amendment.  Doby, 171 F. 3d at 871.

The United States Supreme Court in Foucha v. Louisiana, 504 U.S. 71, 80 (1992), held that state statutes, such as the MHPA, must require clear and convincing evidence that an individual suffers from mental illness and poses a danger either to himself or to others before involuntarily committing that individual to a mental health facility.  Section 50-7301 of the MHPA follows Foucha and provides in relevant part:

> (a) Persons Subject.–Whenever a person is severely mentally disabled and in need of immediate treatment, he may be made subject to involuntary emergency examination and treatment.  A person is severely disabled when, as a result of mental illness, his capacity to exercise self-control, judgment and discretion in the conduct of his affairs and social relations or to care for his own personal needs is so lessened that he poses a clear and present danger of harm to others or to himself.

50 PA. STAT. ANN. § 7207(a).

The statute also provides a further determination for the meaning of phrase "clear and present danger."

> (b) **Determination of Clear and Present Danger**.–(1) Clear and present danger to other shall be shown by establishing that within the past 30 days the person has inflicted or attempted to inflict serious bodily harm on another and that there is reasonable probability that such conduct will be repeated. . . .

Id. § 7301(b).

There is an established constitutional right to not be involuntarily committed to a mental institution without evidence that an individual suffers from mental illness and poses a threat to himself or others.  Addington v. Texas, 441 U.S. 418, 425 (1972).  With respect to whether Mulholland is entitled to qualified immunity or statutory immunity under the MHPA as to the involuntary commitment of Lear, the court finds that there are material facts in dispute which preclude the grant of summary judgment.  The parties dispute whether plaintiff told defendant that he took his pellet gun outside "to scare his neighbors."  The parties also dispute whether plaintiff was visibly upset, rocking back and forth while talking to defendant, and ever stated that he was going to "fix his neighbors."  The status of plaintiff's driveway is also in dispute. Mulholland testified that he saw no damage.  Plaintiff disputes this and relies on testimony from Couch and Carole Lear that there was a substance on the driveway.

Due to these disputed facts and reviewing those facts in the light most favorable to plaintiff, the nonmoving party, the court cannot find, under the third step of the analytical framework, that a reasonable officer, knowing the applicable law, could find that Lear was a danger to himself or others.  The facts in dispute correspond directly with the kinds of behaviors an officer might take into account when determining whether to order an involuntary

commitment.  Likewise, the court cannot conclude, reviewing the disputed facts in the light most favorable to plaintiff, that defendant is entitled to statutory immunity as a matter of law.  The disputed facts will need to be resolved by a jury.  The court, therefore, will deny defendant's motion for summary judgment by reason of genuine issues of material fact being in dispute.


### *Conclusion*

After reviewing the undisputed and disputed material facts of record and finding that genuine issues of material fact exist with respect to plaintiff's Fourth Amendment claim against defendant relating to his involuntary commitment under the MHPA, the court determines that defendant's renewed motion for summary judgment (Doc No. 61) is **DENIED**.


### *Order*

**AND NOW**, this 21st day of November, 2006, upon consideration of the parties' arguments and supporting documents

**IT IS ORDERED** that defendant's renewed motion for summary judgment (Doc. No. 61) is **DENIED**.


By the court:

_____   /s/ Joy Flowers Conti
                          Joy Flowers Conti
                          United States District Judge

cc:  Counsel of Record

12